Filed 8/20/14  P. v. Zamudio CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B247216 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA093920) |
| v. | |
| CAESAR ZAMUDIO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Tomson T. Ong, Judge.  Affirmed.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Defendant Caesar Zamudio appeals following his conviction of possession for sale of cocaine base and possession for sale of methamphetamine. Defendant asserts on appeal: (1) there was insufficient evidence to support a conviction of possession for sale of methamphetamine; (2) the trial court abused its discretion in denying defendant's motion to strike a prior conviction; (3) the trial court imposed an excessive sentence as punishment for defendant's demand for a jury trial, in violation of his state and federal due process rights; and (4) the trial court erred in imposing two sentence enhancements under Health and Safety Code 11370.2.[1] We affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

On November 8, 2012, Detective Robert Riske, a narcotics officer, conducted an investigation in response to complaints about drug sales in Wilmington. Detective Riske circled the area and came upon defendant standing with others on a street corner. Riske parked his car at a distance and observed defendant through binoculars. Two men approached defendant; one handed defendant an unknown object. Defendant walked a short distance away. While walking, he reached into his pants and removed a clear plastic bindle from his buttocks area.[2] Defendant reached into the bindle, took something out, then hid the bindle behind the wrought iron security screen of a window. Defendant walked back to the two men, handed one of the men the object from the bindle, then the two walked away.

Concluding he had witnessed a hand-to-hand drug transaction, Detective Riske called in two backup officers and waited for their arrival. Before backup arrived, Riske saw another man approach defendant. The second man handed defendant an unknown item. Defendant walked to the window, retrieved the bindle, opened it and removed

---

[1]    Unless otherwise stated all statutory references are to the Health and Safety Code.

[2]    Riske defined a "bindle" as: "[E]ither a baggie or ripped-off section of a sandwich bag. Usually they put the narcotics in a sandwich bag, tip it on its edge so it all goes into the corner, then they rip off the corner and tie it so they have all the narcotics in one spot."

something, replaced the bindle behind the wrought iron screen, then walked back and handed what he had taken out of the bindle to the second man. The man promptly left after the interaction.

When backup officers arrived, they detained defendant and recovered "a clear plastic baggie containing an off-white, rock-like solid resembling cocaine and a black baggie containing what appeared to be methamphetamine." Testing indicated the clear bindle contained .19 grams of cocaine base and the black bindle contained .06 grams of methamphetamine. Defendant had $66 in cash in his pocket: two $20 bills, two $10 bills, one $5 bill, and one dollar bill. Defendant had no drug paraphernalia on his person. Officers did not detain either of the apparent buyers.

At trial, Riske testified he had been a law enforcement officer for almost 23 years, and had been assigned to a narcotics division for 10 years. He received training from several entities regarding possession and sales of narcotics. He had personally conducted surveillances, viewed surveillance videos, and observed hand-to-hand drug transactions in person. He had also purchased narcotics while working undercover, and he had talked to senior officers who trained him in narcotics. Riske had participated in over 100 arrests in connection with the investigation of narcotics for sale. In addition to testifying about what he observed before defendant was arrested, Riske also opined that defendant was selling narcotics. Riske explained: "I watched [defendant] do two sales where he went to the bindle and removed items consistent with – I mean, I can't tell what the item was but the bindle itself contained narcotics. So my opinion was he was selling narcotics from that bindle."[3]

The prosecutor subsequently asked Riske: "So as far as your expertise after observing the defendant's actions on November 8, 2012, do you have an opinion if the defendant possessed meth and crack cocaine for the purpose[] of sales? . . . . What is your opinion?" Riske answered: "Based on the observations that it was possessed for

_____

[3] On cross-examination, Riske again testified he could see that defendant took out a bindle, but Riske could not see what defendant was retrieving from the bindle, and could not see the color of what defendant was retrieving from the bindle.

3

sales. . . . I saw him retrieve a bindle from his buttocks. I saw the bindle in his hand. I saw him retrieve an item from the bindle and hand it off to two separate buyers." Riske also explained that the money recovered from defendant factored into his opinion: "As I described earlier he retrieves the bindle from his buttocks. The money was recovered forward up in his pocket and the denomination of the money is consistent with narcotics sales." He testified a usable amount of either rock cocaine or methamphetamine is 0.02 grams.

A jury found defendant guilty of violating section 11351.5, possession for sale of cocaine base, and section 11378, possession for sale of methamphetamine. The court found defendant had suffered a prior strike and, applying other enhancements, sentenced defendant to a total prison term of 20 years and 4 months.

## DISCUSSION

### I. Substantial Evidence Supported the Conviction of Possession for Sale of Methamphetamine

Defendant contends his conviction of possession for sale of methamphetamine is not supported by substantial evidence.[4] We disagree.

"The standard of appellate review of the sufficiency of the evidence to support a jury verdict is settled. 'In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] " 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably

---

[4] Defendant does not challenge the sufficiency of the evidence supporting the conviction for possession for sale of cocaine base.

4

justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " [Citations.]' " [Citation.]' [Citation.]" (*People v. Story* (2009) 45 Cal.4th 1282, 1296.)

Defendant argues there was insufficient evidence to support a finding that he possessed a "sufficient amount of methamphetamine to be used for sale" or that defendant had the specific intent to sell the methamphetamine. We address these contentions in turn.

### A. There was sufficient evidence that defendant possessed a usable amount of methamphetamine

To secure a conviction of a violation of possession for sale of a controlled substance, the prosecution must prove beyond a reasonable doubt that the defendant possessed a controlled substance in an amount sufficient to be used "for sale or consumption as a controlled substance," and that defendant had the specific intent to sell it. (*People v. Parra* (1999) 70 Cal.App.4th 222, 225-226 (*Parra*).)[5] On appeal, defendant contends the People failed to prove he possessed a sufficient amount of methamphetamine for *sale*, ignoring that the standard is an amount for sale or consumption.[6]

---

[5]    *Parra, supra*, set forth all of the elements the prosecution must prove beyond a reasonable doubt to secure a conviction for the unlawful possession for sale of a controlled substance: "(1) the defendant exercised dominion and control over the controlled substance, (2) the defendant was aware that he was in possession of a controlled substance, (3) the defendant was aware of the nature of a controlled substance, (4) the controlled substance was in an amount sufficient to be used for sale or consumption as a controlled substance, and (5) the defendant possessed a controlled substance with the specific intent to sell it." (*Parra, supra*, 70 Cal.App.4th at p. 226.) Defendant does not challenge the sufficiency of the evidence as to the first three elements.

[6]    Indeed, defendant inaccurately quotes the jury instruction given in this case. Defendant quotes the court as instructing the jury: "In order to prove this crime, each of the following must be proved . . . . The substance was in an amount sufficient to be used for sale as a controlled substance. . . ." In fact, consistent with CALJIC 12.01, the court

5

To establish the defendant possessed a sufficient amount of a controlled substance for sale or consumption, the prosecution must prove only that the substance was in a usable form or quantity. (*People v. Rubacalba* (1993) 6 Cal.4th 62, 66 (*Rubacalba*) [affirming conviction for possession of cocaine based on an item containing cocaine and weighing one-tenth of a gram].) The prosecution need not prove the purity or potential narcotic effect of the drug. (*Ibid.*) The "usable-quantity rule prohibits conviction only when the substance possessed simply cannot be used, such as when it is a blackened residue or a useless trace. It does not extend to a substance containing contraband . . . if the substance is in a form or quantity that can be used." (*Ibid.* citing *People v. Leal* (1966) 64 Cal.2d 504.)

Detective Riske's expert testimony was that .06 grams of methamphetamine was a "usable amount." He testified that a single dose of methamphetamine could be as small as .02 grams, suggesting the jury could find defendant possessed three doses. While Riske also indicated many drug users have a higher tolerance and therefore require more than one dose of a drug to achieve a high, our Supreme Court has held that the potential narcotic effect of a small amount of a controlled substance is not a relevant factor for possession. (*Rubacalba, supra*, 6 Cal.4th at p. 66.) In addition, while Riske testified he did not recall a case in which .06 grams of methamphetamine were sold, this did not invalidate his testimony that defendant possessed an amount of methamphetamine that could be consumed.[7] The drug found in the black bindle was not a "residue or useless

---

instructed: "In order to prove this crime, each of the following elements must be proved . . . . The substance was in an amount sufficient to be used for sale or consumption as a controlled substance. . . ."

[7]      On cross-examination, defense counsel and Riske had the following colloquy:
"Q: Is .06 [of methamphetamine] an amount that is normally sold on the street?
A: I couldn't tell you what was normally sold on the street.
Q: Have you ever arrested someone for selling methamphetamine who was selling .06 grams?
A: I don't know.
Q: Is there any name that a buyer might use to refer to an amount of .06 grams?
A: I really don't know.

trace." (*Ibid.*) It was in a usable, white crystalline form. We conclude there was substantial evidence that defendant possessed a usable amount of methamphetamine. The jury was not required to separately find defendant possessed a "sufficient amount to be used for sale."

### B. There was sufficient evidence that defendant possessed the methamphetamine with the intent to sell.

We further conclude the evidence was sufficient to support the jury's finding that defendant possessed the methamphetamine with the intent to sell. We note that " '[i]ntent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense.' [Citation.] 'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.]" (*People v. Rios* (2013) 222 Cal.App.4th 542, 567-568; *People v. Harris* (2000) 83 Cal.App.4th 371, 374 [intent to sell controlled substance may be established by circumstantial evidence].)

The evidence at trial was that Riske observed defendant engaged in what appeared to be two hand-to-hand drug transactions. When the first buyer approached, defendant took a clear bindle—either a plastic sandwich bag, or a corner of a sandwich bag—from the back of his pants. He opened the clear bindle and took something out. Riske could not see what was inside the bindle, but he saw defendant hide the bindle behind a window screen. After completing the first transaction, another buyer approached, and defendant returned to where he had hidden the bindle, opened it, took something out, replaced the bindle, then handed what he had taken out to the buyer. Moments later when additional officers arrived, they found a clear bindle and a black bindle behind the window screen. Defendant had no drug paraphernalia with him.

---

Q: Can you recall even one case where you've seen .06 grams sold?
A: Sold? No."

7

Defendant does not argue the evidence was insufficient to support the conviction for possession of cocaine base for sale. However, he asserts there was insufficient evidence to support a finding that he had the intent to sell the methamphetamine found with the cocaine base because of the smaller amount, and because Riske did not observe defendant with the black bindle. Defendant contends Riske's opinion that defendant possessed methamphetamine for sale was "entirely premised" on Riske's observation of defendant retrieving and selling an item from the clear plastic bindle. Since Riske did not see the black bindle, defendant asserts "the most likely conclusion is that [both buyers] purchased cocaine base."

Although this may have been one permissible conclusion, we disagree that it was the only conclusion supported by the evidence. The facts as established at trial permitted a reasonable inference that the black bindle belonged to defendant, and, like the cocaine base he hid in the same place, the methamphetamine in the black bindle was part of his available inventory for sale that day. Even without an eyewitness observation that defendant was also selling items from the black bindle, the jury could reasonably conclude defendant intended to sell methamphetamine that was packaged in a fashion similar to the packaging of the cocaine base, and was hidden in the same place as the cocaine base.

Defendant contends that since Riske never observed the black bindle he had no basis to opine that defendant possessed the methamphetamine to sell it. However, the jury was not required to construe Riske's testimony so narrowly. As a whole, Riske's testimony indicated he based his opinion on the totality of his observations, the circumstances, and his experience. Riske did not see the black bindle. He could not see what defendant was getting out of the clear plastic bindle. But he did see defendant engaging in conduct that Riske, based on his training and experience, opined was indicative of illegal drug sales. Riske also testified that defendant's behavior was inconsistent with that of the typical drug buyer. He opined that in his experience, it was not typical for buyers to "stash [or] stockpile their newly acquired dope 20, 30 feet away in a ledge or window area." His testimony also indicated that, while the amount of

8

methamphetamine was small, it was the equivalent of as much as three doses. Riske's inability to see exactly what defendant was selling, and the absence of an observation of defendant handling the black bindle, did not prevent the jury from reasonably inferring, based on the evidence, that defendant possessed the methamphetamine with the intent to sell it.

Although defendant's argument on appeal focuses on the alleged invalidity of Riske's opinion that defendant intended to sell the methamphetamine, we find that even without that opinion there was substantial evidence for the jury to conclude defendant possessed the requisite intent. Riske's testimony included not only his opinion about defendant's intent to sell the methamphetamine, but also Riske's direct observations, description of the circumstances of the arrest, and other opinions regarding narcotics sales and purchases that were properly based on his experience and training. As explained above, these other portions of his testimony were relevant and substantial evidence, and were consistent with his ultimate conclusion that defendant intended to sell the methamphetamine. Although convictions of possession for purpose of sale have been upheld on the basis of an experienced officer's testimony opining on the defendant's intent, (see *People v. Harris, supra*, 83 Cal.App.4th at pp. 374-375), the conviction need not be upheld on that basis alone in this case. (*People v. Dowl* (2013) 57 Cal.4th 1079, 1089-1090.)

We acknowledge that, "[b]y definition, 'substantial evidence' requires *evidence* and not mere speculation. In any given case, one 'may *speculate* about any number of scenarios that may have occurred. . . . A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' [Citations.]" (*People v. Cluff* (2001) 87 Cal.App.4th 991, 1002.) And, indeed, "a jury may not rely upon unreasonable inferences . . . '[a]n inference is not reasonable if it is based only on speculation.' [Citation.]" (*People v. Hughes* (2002) 27 Cal.4th 287, 365 (*Hughes*).)

9

But here, the jury did not have to speculate or rely on suspicion alone. The jury could draw a reasonable inference from the evidence that defendant possessed the methamphetamine with the intent to sell. Defendant engaged in a hand-to-hand drug transaction in which he pulled an item out of his pants, appeared to open it and sell some of the contents, hid the item, then opened it again to retrieve an item for a second sale. In the place where he had hidden drugs he was selling, police found cocaine base and methamphetamine, packaged similarly, but in different colored bags. The methamphetamine was in a usable amount of multiple doses. Nothing in the evidence suggested defendant possessed the methamphetamine for his personal use. (See *People v. Fitzwater* (1968) 260 Cal.App.2d 478, 490 [inference that narcotics were for sale rather than personal use supported in part by fact that drugs were kept in a storage place rather than residence].) "In order to conclude that the evidence was legally sufficient, we need not determine that the evidence was strong. . . ." (*Hughes, supra,* 27 Cal.4th at p. 365.)

And, while the jury must acquit the defendant if it finds circumstantial evidence is susceptible of two interpretations, one of which suggests innocence, our role is different. " ' " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " [Citations.]' " [Citation.]' [Citation.]" (*People v. Watkins* (2012) 55 Cal.4th 999, 1020, italics omitted.) We conclude the evidence was sufficient to permit a reasonable jury to infer, and find beyond a reasonable doubt, that defendant possessed the methamphetamine with the intent to sell.[8]

---

[8]    Our dissenting colleague suggests that we view the evidence in the light most favorable to defendant, or that we favor inferences *against* the judgment, rather than indulging all reasonable inferences in support of the jury's conclusions. This novel application of the substantial evidence rule is at odds with the settled standard of appellate review of the sufficiency of the evidence.

**II.    The Trial Court Did Not Abuse its Discretion in Denying Defendant's *Romero* Motion**

Defendant contends the trial court abused its discretion under Penal Code section 1385 in denying his motion to strike a prior conviction under the Three Strikes Law. Defendant argues the present offense was not violent or serious and the amount of drugs found was minimal. He points out that his 1991 robbery conviction was not violent and therefore is not within the spirit of the Three Strikes Law. Because the trial court used proper discretion, we reject defendant's contention.

**A.  Standard of Review**

"[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 528.) It is thus presumed any prior conviction under the Three Strikes Law applies to the present conviction and that a prior conviction establishes a sentencing requirement that must be followed. (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) A trial court can, either of its own motion or upon the application of the prosecuting attorney, and in the furtherance of justice, dismiss a strike under Penal Code section 1385. (*Romero,* at p. 504.) A trial court's decision to refuse to dismiss a prior conviction under the Three Strikes Law is reviewable for abuse of discretion. (*Carmony*, at p. 376.) The reviewing court may only find abuse of discretion if the decision "is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

**B.  Analysis**

The trial court explained its ruling to deny defendant's *Romero* motion as follows: "I have considered whether I should strike that strike and I decline. I decline because [defendant] has not led a crime-free life during the period of time that he committed the strike all the way [until] today's date. He has committed several offenses. For him to disingenuously now beg for a drug program is very creative. He has committed how many drug cases in between the time of the strike and today? And did not avail himself of a drug program or if he did they certainly did not work. So what makes me think

11

today that another drug program would work. He throughout this case stood by his request for a drug program, but then again, if he did not take advantage of the drug program in the past. He has not accepted responsibility and he did and we gave him one and it didn't work. Sometimes time in custody is very reflective of somebody [with a] drug problem[]. The *Romero* motion based [on] the numerosity of the prior convictions, based upon his life that did not remain crime-free from the time of the robbery all the way to today's date is the basis for this court not granting the *Romero* motion."

Defendant argues his prior robbery conviction was not violent and should be disregarded because it occurred over 20 years ago. Although the age of a strike is a factor that the court may consider, it is not dispositive. The trial court also reasonably based its discretion on defendant's many prison terms. The record indicates defendant has been sentenced to prison on five separate occasions in the 23 years since his robbery conviction totaling over 16 years of prison time. Based on defendant's continuous violations of the law in the time since his first strike, the trial court reasonably found defendant was not outside the spirit of the Three Strikes law. We find no abuse of discretion.

## III. Defendant was Not Punished for Exercising His Right to a Jury Trial

Defendant contends his federal and state due process rights were violated by his 20 year, 4 month sentence. The sentence was computed as follows: the upper term of five years on count 1, doubled pursuant to the Three Strikes law to ten years, plus three years for defendant's prior drug conviction (§ 11370.2, subd. (a)), plus three years for prior prison terms (Pen. Code § 667.5, subd. (b)), plus, as to count 2, one third the midterm (eight months) doubled pursuant to the Three Strikes Law to 1 year, 4 months, plus three years for the prior drug conviction (§ 11370.2, subd (c)).

Defendant claims the sentence is excessive and was imposed as punishment for exercising his right to a jury trial. Respondent argues defendant waived his right to appeal this issue by not objecting during sentencing. We exercise our discretion to review this contention on its merits (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6) but find no evidence the sentence was imposed as punishment.

12

It is beyond debate that a defendant cannot receive a harsher sentence as punishment for exercising his right to a jury trial. (*In re Lewallen* (1979) 23 Cal.3d 274, 278; see also *Bordenkircher v. Hayes* (1978) 434 U.S. 357, 363.) But simply because a court imposes a longer sentence than might have been earlier discussed by the court and counsel, does not mean defendant is being punished for electing to go to trial. Courts regularly choose among the lower, mid and upper terms by balancing the presence or absence of aggravating or mitigating factors, often imposing required or discretionary enhancements. (*People v. Scott* (1994) 9 Cal.4th 331, 351.) Criminal proceedings are fluid in nature and what might seem to be a reasonable sentence at one point in time may be unacceptable later on. In order to claim a sentence violated the defendant's due process rights, "[t]here must be some showing, properly before the appellate court, that the higher sentence was imposed as punishment for exercise of the right." (*People v. Angus* (1980) 114 Cal.App.3d 973, 989-990.) Defendant has not met this burden.

Defendant fails to reference any direct evidence from the transcript showing the trial court explicitly punished defendant for exercising his right to a jury trial. Our independent review of the record similarly comes up empty. Instead, defendant contends two factors demonstrate the trial court imposed a sentence to punish him for choosing to go to trial: (1) the increase between the plea deal offered before trial and the final sentence imposed; and (2) the court's reliance on decade-old convictions to increase the sentence. Neither of these arguments meet defendant's burden.

## A. Increase in sentence from plea offer

Defendant was offered an eight year plea deal. The United States Supreme Court has long accepted plea deals as a means to expedite the administration of justice by allowing "a State [to] encourage a guilty plea by offering substantial benefits in return." (*Corbitt v. New Jersey* (1978) 439 U.S. 212, 218-219.) The defendant is not entitled, as a matter of right, to the same sentence after trial as that offered as a pretrial plea deal. (*In re Lewallen, supra*, 23 Cal.3d at p. 280.) If a defendant "could demand the same sentence after standing trial that was offered in exchange for a guilty plea, all incentives to plead guilty would disappear." (*United States v. Carter* (9th Cir. 1986) 804 F.2d 508,

13

513.) That the trial court imposed a harsher sentence than what was offered earlier does not by itself show the trial court imposed the sentence as punishment for defendant's exercise of his right to a jury trial.

## B. Excessive sentence

Defendant also argues the "outrageous" length of the sentence inherently proves defendant was punished for exercising his right to trial. We again disagree. The sentence was within the confines of the law and the court's discretion. As such, the length of the sentence alone does not indicate the court imposed the sentence to punish defendant for going to trial. The trial court gave the following reasons for the sentence it imposed.

As to Count 1, the trial court stated, "the court has considered the following aggravating factors to justify the maximum term allowed by law: The manner in which the crime was carried out indicated planning, sophistication and professionalism. The Defendant insured minimum nexus between his physical self and the narcotics, secreting the narcotics away from his body until he could sell the narcotics. The narcotics were placed on a ledge in the building. When on his body the Defendant secreted the bag or bags in his butt crack . . . . [T]he court finds that the aggravating factors substantially outweigh any mitigating factors and the maximum term should be warranted and is warranted."

As to Count 2, the trial court correctly concluded that Penal Code section 654 did not apply.[9] The court explained, "the multiple array of drugs make the defendant a more dangerous and marketable drug dealer . . . . [S]ection 654 does not apply when talking about possession for sale of many different drugs and the defendant can be sentenced for sale each of the individual drugs and consecutive terms are imposed herein." (See, e.g. *People v. Barger* (1974) 40 Cal.App.3d 662, 672.) The trial court proceeded to sentence defendant to one-third the midterm, to be served consecutively. (Pen. Code, § 1170.1.)

---

[9]     Penal Code section 654 forbids punishment of the same act under multiple provisions. Punishment for an act is limited to the sentencing provision that provides for the longest potential imprisonment.

14

The remainder of defendant's sentence was comprised of required enhancements pursuant to various statutes. The court explained the reasoning behind the sentencing decision, and it applied enhancements according to their respective statutes. We find no abuse of discretion and no violation of defendant's rights.

## IV. The Trial Court Properly Imposed Two Enhancements Under Section 11370.2

Defendant was convicted of violating sections 11351.5 and 11378. The trial court imposed two drug-related prior conviction enhancements, one under section 11370.2 subdivision (a), and one under section 11370.2, subdivision (c).[10] Defendant contends only one section 11370.2 enhancement may be applied and, thus, one must be stricken. We disagree.

As defendant acknowledges, this issue was addressed in *People v. Edwards* (2011) 195 Cal.App.4th 1051 (*Edwards*). In *Edwards*, the defendant was charged with transportation and possession for sale of methamphetamine (§§ 11379, subd. (a) & 11378), transportation of heroin (§ 11352, subd. (a)), and transportation of cocaine (§ 11352, subd. (a)(5)). The information alleged the defendant had suffered three prior drug related convictions. (*Edwards,* at p. 1054.) The information accordingly alleged

---

[10] Section 11370.2, subdivision (a) provides: "Any person convicted of a violation of, or of a conspiracy to violate, Section 11351, 11351.5, or 11352 shall receive, in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code, a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment."

Section 11370.2, subdivision (c) similarly provides: "Any person convicted of a violation of, or of a conspiracy to violate, Section 11378 or 11379 with respect to any substance containing a controlled substance specified in paragraph (1) or (2) of subdivision (d) of Section 11055 shall receive, in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code, a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment."

three drug-related prior conviction enhancements to two counts pursuant to section 11370.2, subdivision (c), and as enhancements to two additional counts pursuant to section 11370.2, subdivision (a). (*Edwards,* at p. 1056.) The trial court imposed three enhancements each as to all four counts.[11] On appeal, the defendant argued the section 11370.2 enhancements were status enhancements, thus an enhancement for each prior drug-related conviction could only be imposed once, on the aggregate sentence. (*Edwards,* at p. 1056.)

Although the appellate court agreed the section 11370.2 enhancements are "status enhancements," it also concluded "the Legislature intended that multiple enhancements can be imposed for the same prior convictions, if there are current multiple counts of conviction as to which different subdivisions of section 11370.2 apply." (*Edwards, supra,* at p. 1057.) The *Edwards* court came to this conclusion by considering the plain language of the statute:

> "Although the prior felonies listed in all three subdivisions are the same, each subdivision applies to different current offenses: sections 11351, 11351.5 and 11352 (subd. (a)); sections 11378.5, 11379, 11379.5, 11379.6, 11380.5 and 11383 (subd. (b)); sections 11378 and 11379 with respect to any substance containing a controlled substance specified in paragraph (1) or (2) of subdivision (d) of section 11055 (subd. (c)). And each subdivision mandates imposition of the enhancement upon conviction of a qualifying offense, without limitation. The language of a statute is the most reliable indicator of legislative intent. [Citation.] If the language is unambiguous, we must apply it without resort to extrinsic sources to determine the Legislature's intent. [Citation.] In this respect, the language of section 11370.2 is unambiguous. Consequently, we conclude that the Legislature intended each subdivision to apply independently of the others, meaning that if a defendant is convicted of a violation of a qualifying offense under subdivision (a) and is also convicted of a qualifying offense under either subdivision (b) or subdivision (c), his or her sentence is to be enhanced under both subdivisions." (*Edwards, supra,* at pp. 1058-1059, fns. omitted.)

---

[11] The court stayed the enhancements on all but the principal count. (*Edwards,* at p. 1056.)

We find this reasoning persuasive.  In this case, defendant was convicted of a violation of a qualifying offense under subdivision (a), and another qualifying offense under subdivision (c).  As such, the trial court properly enhanced his sentence under both subdivisions.  *People v. Tillotson* (2007) 157 Cal.App.4th 517 (*Tillotson*), does not mandate a different result.  In *Tillotson*, the defendant was convicted of two counts of violating section 11378.  He admitted one prior drug-related conviction.  (*Tillotson,* at p. 542.)  The trial court imposed two three-year enhancements for drug-related prior convictions under section 11370.2, subdivision (c).  The defendant argued the enhancement could only be imposed once to the aggregate sentence.  (*Tillotson,* at p. 542.)  The People conceded the point.  The appellate court agreed the section 11370.2, subdivision (c) enhancement could only be imposed once to aggregate the sentence.

As the *Edwards* court noted, in *Tillotson*, the Attorney General conceded the point, and the court did not analyze the contention presented in *Edwards*, or presented here.  In *Tillotson*, the trial court imposed a section 11370.2, subdivision (c) enhancement twice.  In this case, the trial court imposed only one section 11370.2, subdivision (c) enhancement, and one separate enhancement under section 11370.2, subdivision (a).  We agree with the *Edwards* court that *Tillotson* does not address the issue of multiple enhancements based on different subdivisions of section 11370.2.

We find no error in the trial court's imposition of enhancements under section 11370.2, subdivisions (a) and (c).

## DISPOSITION

The judgment is affirmed.


BIGELOW, P.J.

I concur:


GRIMES, J. .


17

**RUBIN, J., CONCURRING AND DISSENTING-**

I concur in Parts II, III and IV of the majority opinion but respectfully dissent from Part I. I conclude that there is insufficient evidence of an intent to sell the methamphetamine that formed the conviction in Count 2. Indeed, this may be one of those rare cases where there is no evidence at all to support an element of an offense.

A.

For years, appellate courts have wrestled with the term substantial evidence, and, in almost every case, "substantial" has won the match. There is, nevertheless, real meaning to the word "substantial" in the formulation of our standard of review, and close inspection in some cases may reveal that evidence thought to be substantial is in fact only "some" or "any." The majority correctly acknowledges that especially in cases like this one, where evidence of intent must be proved circumstantially, the inferences from the evidentiary circumstances must be reasonable and not speculative. (Maj. opn., at p. 9.)

But the analysis of substantiality, I suggest, must proceed beyond whether the evidence is speculative. As our highest court has held, in criminal cases the substantial evidence standard of review is founded on constitutional principles. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) At a constitutional minimum, appellate courts must ensure that " 'considering the evidence in the light most favorable to the government, there is substantial evidence from which a jury might *reasonably find* that an accused is guilty beyond a reasonable doubt.' " (*Id.* at p. 319, fn. 12, original italics.) This teaches us that the evidence must be found substantial *contextually in light of the reasonable doubt standard*, not in the abstract: Was the evidence so substantial that a jury could reasonably find guilt beyond a reasonable doubt?

Nearly 50 years ago, our state Supreme Court underscored the significance of the word "substantial" in our standard of review in *People v. Bassett* (1968) 69 Cal.2d 122, 138 (*Bassett*). Justice Mosk's unanimous opinion quoted from one of the court's earlier cases: "[W]e emphasized in *Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689, 690], that 'The critical word in the definition is "*substantial*"; it is a door which can lead

as readily to abuse as to practical or enlightened justice.'  Seeking to determine the meaning of 'substantial' in this connection, the court in *Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54], canvassed dictionary and judicial definitions and concluded that the term 'clearly implies that such evidence must be of ponderable legal significance.  Obviously the word cannot be deemed synonymous with "any" evidence.  It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' "  (*Ibid.*)  This standard has been repeated in thousands of appellate decisions ever since.  (See, e.g., *Meyers v. Board of Administration etc.* (2014) 224 Cal.App.4th 250, 260.)

*Bassett* also relied on its earlier decision in *People v. Holt* (1944) 25 Cal.2d 59, 70, and described the appellate task thusly:  "As the emphasized language indicates, our task in this regard is twofold.  First, we must resolve the issue in the light of the whole record – i.e., the entire picture of the defendant put before the jury – and may not limit our appraisal to isolated bits of evidence selected by the respondent.  Second, we must judge whether the evidence of each of the essential elements constituting the higher degree of the crime is s*ubstantial*; it is not enough for the respondent simply to point to 'some' evidence supporting the finding, for 'Not every surface conflict of evidence remains substantial in the light of other facts.' "  (*Bassett, supra,* 69 Cal.2d at p. 137.)

At the time of the *Bassett* decision, the inquiry into the state of the evidence necessary for affirmance was whether it was substantial.  Or to state the converse, was it insubstantial?  In our criminal jurisprudence, it was either substantial or insubstantial.  More recently we have added another test to our standards of review in criminal cases: *some* evidence.  This standard was first adopted by our Supreme Court in *In re Rosenkrantz* (2002) 29 Cal.4th 616, 625-626 for the review of a Governor's decision to grant or deny parole, and it remains the standard of review only in those cases.  It is an extremely hands-off standard:  "The 'some evidence' standard is 'more deferential than substantial evidence review, and may be satisfied by a lesser evidentiary showing.'  . . . '[U]nder the "some evidence" standard, "[o]nly a modicum of evidence is required." ' "  (*In re Shaputis* (2011) 53 Cal.4th 192, 210.)

2

Appellate justices have now another standard with which to review evidence. As we gain more experience with the "some" evidence standard, and continue the regular affirmance of trial court decisions following criminal trials, there is a risk that the distinction between "some" and "substantial" may be lost. As Justice Mosk told us, the substantial evidence standard "is a door which can lead as readily to abuse as to practical or enlightened justice." (*Bassett*, *supra*, 69 Cal.2d at p. 138.) To avoid the door that leads to injustice, appellate courts must faithfully and carefully consider, and rigorously apply, the exacting components of the substantial evidence test that our Supreme Court has repeatedly directed us to use: ponderable, reasonable in nature, credible, of solid value, proof of the essential elements of the crime, and to distinguish this evidence from that which is merely "some" evidence. Without such exactitude, appellate courts will continue to be susceptible to a recent characterization that they administer justice in a "culture of affirmance."[1]

Although my colleagues in the majority disagree, I suggest the evidence of intent to sell methamphetamine here (in contrast to the intent to sell cocaine) at best can be described as "some," and fails to meet our Supreme Court criteria of substantiality. I will turn to that evidence.

---

[1] Last month, Professor Gerald Uelman used the expression "culture of affirmance" in describing the context of Court of Appeal decision making. (Maura Dolan, *State High Court Nominee Learned Power of Law as a Child in Mexico*, Los Angeles Times (July 22, 2014) (online edition as of August 18, 2014).) In an earlier law review article, he had argued that the institutionalized trend of appellate courts to defer to trial courts was so strong that it produced the following effect: "The basic norms of appellate review thus become norms of affirmance." (Uelman, *Review of the Death Penalty Judgments by the Supreme Courts of California: A Tale of Two Courts*, (1989) 23 Loy. L.A. L. Rev. 237 at p. 239.)

B.

The evidence of defendant's intent to sell methamphetamine was founded on the testimony of Detective Riske of the Los Angeles Police Department. When asked on direct examination if he had "an opinion if the defendant possessed [methamphetamine] and crack cocaine for the purposes of sales," Detective Riske said he did. He then testified his opinion was "Based on the observations that it was possessed for sales."[2]

Experienced officers, of course, "may give their opinion that narcotics are held for purposes of sale based upon such matters as quantity, packaging and normal use of an individual; [and] on the basis of such testimony convictions of possession for purpose of sale have been upheld." (*People v. Newman* (1971) 5 Cal.3d 48, 53, disapproved on another point by *People v. Daniels* (1975) 14 Cal.3d 857, 862; see *People v. Dowl* (2013) 57 Cal.4th 1079, 1082.) Defendant has not argued that Detective Riske lacked the expertise to render an opinion on intent to sell, and it is clear that Riske properly qualified as an expert. Rather, defendant contends there was an insufficient factual basis for Riske's opinion that the methamphetamine was possessed for sale.

In assessing the sufficiency of expert testimony, appellate courts are guided by the familiar principal that an expert's "opinion is only as good as the facts and reasons on which is it based." (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523.) As Justice Mosk also wrote in *Bassett*: " 'Expert evidence is really an argument of an expert to the court, and is valuable only in regard to the proof of the *facts* and the validity of the *reasons* advanced for the conclusions.' (Italics added.) (*People v. Martin* (1948) 87 Cal.App.2d 581, 584 [197 P.2d 379])." (*Bassett, supra,* 69 Cal.2d at p. 141.)

As I read the record, these are the facts underlying Detective Riske's opinion on defendant's intent:

---

[2] Although Detective Riske used the word "it" rather than "they," in light of the question I understand his testimony as expressing the opinion that both the methamphetamine and the cocaine base were possessed for sale. Later Riske confirmed he was referring to both controlled substances.

- Riske's opinion was based "primarily on my observations of [defendant] conducting sales," which he had seen before defendant was arrested. "So my opinion was he was selling narcotics from that bindle." By "that bindle" Riske meant the clear bindle containing cocaine that Riske saw defendant retrieve from his backside. The methamphetamine was, however, in a black bindle that Riske never saw defendant handle. Officers discovered the black bindle only after they arrested defendant and searched behind the window security screen where Riske saw defendant hide the clear bindle. But, I suggest, inferring intent to *sell* (as opposed to possession) from the black bindle's proximity to the clear bindle is speculative. Because police arrested neither purchaser, the police recovered no evidence from a completed transaction that could bear on defendant's intent to sell methamphetamine, meaning there was no evidence of defendant taking anything from the black bindle as part of any drug sale. In sum, Riske's observation of defendant's cocaine sales from the clear bindle which defendant handled did not by itself suggest an intent to sell methamphetamine from a different bindle that Riske never saw defendant touch or retrieve.[3]

- Turning from the location of the black bindle to its contents, Detective Riske testified it was "possible" for .06 grams of methamphetamine to be sold. But we know anything is possible, and a possibility does not constitute evidence. *(People v. Sanders* (2010) 189 Cal.App.4th 543, 557; *People v. Blinks* (1958) 158 Cal.App.2d 264, 266.) Possible evidence cannot be "ponderable" evidence. (*Bassett, supra,* 69 Cal.2d at p. 138.) More importantly, although Riske had been a police officer for 23 years, and assigned to narcotics for the last 10, he did not

---

[3] I do not mean to suggest that possession for sale cannot sometimes be inferred from actual sales of narcotics close in time. However, prior sales have to be placed in context with the narcotics still possessed. The prior sales of cocaine here have to be considered in light of the small amount of methamphetamine found on defendant in assessing whether it is reasonable to infer possession for sale of the methamphetamine from the prior sales of cocaine.

know of any instance in which .06 grams had, in fact, been sold. He also said that he could not say what amount of methamphetamine was "normally sold on the street." There was evidence that in theory .06 grams could produce three doses but Detective Riske also testified that street users would normally need more than that amount due to users' tolerance. That defendant possessed a small, but usable, amount cannot automatically equate with intent to sell the specific amount in that very bindle because the usable amount of the substance is one element of the offense and the intent to sell is another. (*People v. Montero* (2007) 155 Cal.App.4th 1170, 1177; CALCRIM 2302.)

- Defendant was not found with drug paraphernalia, which suggested intent to sell not personal use.

I look at this evidence through the lens of the standard of review discussed above. To be sure, the evidence must be considered in the light most favorable to the judgment, with all deductions drawn in support of the judgment. (See *People v. Carpenter* (1997) 15 Cal.4th 312, 387.) Appellate courts do not assess the credibility of witnesses. (*Ibid.*) Under that standard, I distill Detective Riske's testimony in support of his opinion that defendant intended to sell the methamphetamine in the black bindle as follows:

Although in his decades as a police officer he had never seen an amount as small as .06 grams of methamphetamine sold, (1) a dose can be as small as .02 grams; (2) defendant sold cocaine that day, and the methamphetamine was found near it; and (3) there was no drug paraphernalia found on defendant. In my view this evidence is insufficient to establish intent to sell the actual amount left in the bindle. The issue is whether *this* .06 grams was possessed for sale. Although a dose can be as small as .02 grams, Riske had no experience with sales of .02 grams or even .06 grams. Stated in a manner that at first blush might seem startling, there is no evidence in this case that .06 grams of methamphetamine has ever been sold to anyone at any time. Perhaps some other officer might have had experience with sales of small amounts of

6

methamphetamine but that officer was not called to testify here. That defendant may have sold some different dose of methamphetamine some other time, possibly even from the black bindle earlier in the day, does not permit a reasonable jury to conclude beyond a reasonable doubt that he intended to sell the very .06 grams in the bindle.

Reported cases reversing a possession-for-sale conviction for insufficiency of a narcotics officer's expert testimony are rare, and the reasoning of those few cases is tenuous in terms of the present case. (See, e.g., *People v. Hunt* (1971) 4 Cal.3d 231, 237 [officer's expertise insufficient for opinion that prescription drug was possessed for sale since his experience was with illegal drugs]; *People v. Chakos* (2007) 158 Cal.App.4th 357 [officer's expertise insufficient to distinguish possession of marijuana for sale and lawful possession of amount of marijuana for medical purposes].) The rarity notwithstanding, there is a doctrinal line which the evidence must pass before it can be said to be substantial. My review of the evidence compels me to conclude that the line was not crossed here and the evidence was legally insufficient. I turn now to the majority's view of the evidence.

## C.

As I read the opinion, it appears that the majority relies on the following to reach its conclusion that there is substantial evidence of intent to sell.

*First,* defendant was engaged in selling cocaine and was observed by police officers making two sales. That certainly is relevant evidence but it says very little about whether defendant also had the intent to sell an extremely small amount of methamphetamine in the black bindle.

*Second,* the jury could infer that the black bindle with the methamphetamine belonged to defendant because it was found near and was packaged similarly to the clear bindle from which defendant sold cocaine. This, too, is true, but it does not raise a reasonable inference that the .06 grams was intended for sale. To emphasize the point, I would certainly agree that if a significant amount of methamphetamine remained in the black bindle, the evidence would be substantial that defendant intended to sell that

7

amount.  The problem for me is not in the surrounding circumstances of what defendant was doing – he is admittedly a drug seller from which a jury could reasonably infer that he would have sold cocaine or methamphetamine that he had to a willing buyer – but here there was just not enough methamphetamine to sell.  Or at least, there was no evidence that defendant or anyone else had ever conducted a sale of .06 grams.

*Third,* I also agree with the majority that the fact Detective Riske did not see the black bindle is of no moment.

*Fourth,* as to Riske's testimony that defendant did not appear to be a drug buyer, I agree with that as well.  But under the facts of this case, with the small amount of methamphetamine, the fact that defendant was not a buyer did not reasonably suggest he intended to sell the amount in question.

*Fifth,* I agree that Riske reasonably expressed the opinion that .06 grams could produce three doses, but that does not suggest anyone was willing to buy a .02 - .06 gram dosage, and Riske had no information that sales of that amount had ever taken place.

In sum, I find none of the majority's factual arguments even address the plain fact that there is no evidence that anyone has ever sold .06 grams of cocaine, and there is no evidence that defendant had the intent to sell an amount that could not be sold.

As I discuss next, the weakness in the prosecution's case on the methamphetamine charge does not merely enliven a theoretical inquiry by the judiciary as to whether evidence has reached the "substantial" threshold.  The manner in which the trial court sentenced defendant consecutively and by adding on several enhancements, also consecutively, means that defendant will spend significantly more time in prison than he would have if the majority had found the evidence on the methamphetamine count insufficient.

### D.

I agree with the point the majority makes that the sentence here was too long (Maj. Opn., at p. 14), and indeed harsh (Maj. Opn., at p. 15).  Although I do not conclude that the trial court's sentence constituted an abuse of discretion, it is as close as one can

8

imagine and is very hard to justify. I also observe that the process by which the sentence was imposed raises serious questions about the fairness of the proceedings.

On November 29, 2012, the trial court (a different judge than the trial and sentencing judge) called the case for preliminary hearing. At the time, the court had a Early Disposition Report from the Probation Department. That report had all the essentials of the crime that eventually were developed at the preliminary hearing and at trial, and succinctly described the officers' observations, the two separate sales, and defendant's possession of .19 grams of cocaine and .06 grams of methamphetamine. Although the trial court expressed some skepticism about the People's offer of eight years, the court agreed to an eight-year term. The court then asked defendant:

COURT:          "Do you want the 8 or not. You have all of five seconds to decide right now.

"1, 2, 3, 4, 5."

DEFENDANT:    "Is that at half time?"

COURT:          "I'll take that as a 'no.' "

After a pause in the proceedings, the court proceeded with the preliminary hearing.

No significant facts other than that summarized in the probation officer's report were developed either at the preliminary hearing or at trial.

After trial and prior to the sentencing hearing, the People filed a sentencing memorandum asking for 22 years and 4 months. In addition to defendant's very long record which was known by the prosecutor and the court when the eight-year plea disposition was offered, the sentencing memorandum also referenced a letter defendant wrote to the District Attorney in which defendant admitted he was a drug user, and asked for leniency and a drug program. The letter said that defendant's "buddy" actually committed the second degree robbery (the strike) in 1990 but defendant pled because he was present and his face was recorded on the security camera. He received a two-year

9

sentence for an unarmed robbery.[4] At the sentencing hearing in the present case, the prosecutor also argued that defendant "begins his letter by minimizing his actions in the current case by stating 'they found not even $20 worth of drugs.' " Far from minimizing his actions, defendant was actually repeating exactly what Detective Riske said at trial – that the amount of cocaine left in the clear bindle was worth $20.

In imposing its sentence, the trial court found the crimes indicated "planning, sophistication and professionalism." However, the only facts the trial court relied on was that defendant at one time had kept the drugs away from his body on a window ledge and then at another time had secreted the drugs on his body. These facts do not appear to make these crimes anything more than typical street drug sales. There is little sophistication in this type of crime, a crime which the courts see all too often.

The court then proceeded to sentence defendant to 20 years and 4 months, giving him the maximum on the cocaine charge, doubled because of the strike, adding the maximum one-third midterm for the methamphetamine charge, also doubled because of the strike and to run consecutively, plus various drug and prison terms priors, all running consecutively. The various enhancements totaled nine years.

Although I agree with the majority that the sentence was within the court's discretion, the three fold increase over the preliminary hearing offer, the manner in which the original plea offer "expired" in five seconds, and the sheer length of the consecutive sentence at least calls into question in my mind the appropriateness of the sentence, thus giving tangible consequence to the majority's analysis of the evidence.


RUBIN, J.

---

[4] At the preliminary hearing for the 1990 robbery, the police officer testified to the victim's statements that defendant was one of three people who took beer from the cooler of a mini mart. No weapon was used in the incident, and the fear necessary for robbery appears to have been based solely on the presence of defendant and his cohorts and not from any threats.